**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| CALEB MONTES RAMALES, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:26-cv-02280-SHL-atc |
| SCOTT LADWIG, Acting Director of the New Orleans Field Office of ICE, in his official capacity, | ) | |
| Respondent. | ) | |

**ORDER GRANTING PETITION**

On March 17, 2026, Petitioner Caleb Montes Ramales filed the Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2241.  (ECF No. 1.)  Montes Ramales challenges his

continued detention in the West Tennessee Detention Facility without a bond hearing, and seeks

his "immediate, unconditional release," arguing that his detention is "void *ab initio*" and that a

bond hearing is an "inadequate remedy."  (Id. at PageID 1-2.)  Respondent Scott Ladwig[1]

responded on March 25.  (ECF No. 12.)  Montes Ramales replied the same day.  (ECF No. 13.)

For the reasons explained below, Montes Ramales is entitled to immediate release, and

the Petition is **GRANTED**.

**BACKGROUND**

Montes Ramales, a citizen of Mexico, initially entered the United States on January 10,

2002, and voluntarily returned to Mexico the same day.  (ECF No. 12 at PageID 36.)  At an

---

[1] Respondent points out that Scott Ladwig has been replaced as the Acting New Orleans Field Office Director of Immigration and Customs Enforcement by Christopher Bullock.  (ECF No. 12 at PageID 34 n.1.)  He asserts that Bullock is the proper Respondent in this case.  (Id.) Montes Ramales agrees that substitution is appropriate.  (ECF No. 13 at PageID 60 n.1.)  Thus, the case caption will be **MODIFIED** to reflect that Christopher Bullock is the Respondent.

unknown time, he reentered the United States.  (Id.)  He "has built a life in Memphis,
Tennessee," and is married to a U.S. citizen, with whom he has three U.S. citizen children.  (ECF
No. 1 at PageID 3.)  He has no criminal history.  (Id.)

On October 29, 2025, he was detained during a traffic stop and taken into ICE custody.
(ECF No. 12 at PageID 36.)  According to Montes Ramales, his family has struggled financially
during his detention and "faces the imminent threat of losing their home."  (ECF No. 1 at PageID
3.)  The psychological toll on his children has also been severe, with one child "now requiring
psychological care as a direct result of the father's absence."  (Id.)  He remains at the West
Tennessee Detention Facility in Mason, Tennessee.  (Id.)  The present Petition followed, the crux
of which argues that Montes Ramales was illegally detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Montes Ramales is subject
to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared
ineligible to be released on bond.  Until recently, however, most noncitizens in this situation
were given bond hearings under a different provision, § 1226(a).  See Godinez-Lopez v. Ladwig,
No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a)
allows immigration authorities to release immigrants from detention on a bond of $1,500 or
more, unless they require detention for certain reasons.  For example, noncitizens with certain
criminal records may not be released on bond.  8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for
admission" who are "seeking admission."  "Applicants for admission" has been interpreted to
mean recent arrivals, including those who have not been "physically present in the United States
continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien
described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has

been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a). Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."). The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission." And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal are detained without a bond hearing. This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Montes Ramales alleges violations of § 1226(a) and Fifth Amendment due process. (ECF No. 1 at PageID 8–11.) He seeks his immediate release. (Id. at PageID 11.) In response, Respondent contends that Montes Ramales should be required to exhaust administrative remedies; that § 1225, not § 1226, applies to him because he is an "applicant for admission"; that Montes Ramales should be treated for due process purposes as if stopped at the border; and that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediately released. (ECF No. 12 at PageID 37–44.)

3

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)). Montes Ramales challenges his detention without bond as violative of § 1226(a) and his constitutional rights. (ECF No. 1 at PageID 15–17.) The Court first considers whether exhaustion should be excused, then interprets § 1225 and § 1226 to determine which applies to Montes Ramales, and then analyzes the due process claim.

## I.    Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). When Congress is silent on administrative exhaustion, "sound judicial discretion governs." Id. Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies. McCarthy, 503 U.S. at 144. The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction. See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018). In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions. E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

4

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims. Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)). Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship. Id. If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused. Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Montes Ramales argues that exhaustion should be excused here because 28 U.S.C. § 2241 lacks an exhaustion rule; exhaustion would be futile; and "the BIA cannot adjudicate the constitutionality of the statutes it administers." (ECF No. 13 at PageID 61.)

Respondent argues that the Court should dismiss the Petition based on prudential exhaustion, as Montes Ramales has not appealed to the BIA and received an adverse decision. (ECF No. 12 at PageID 38.) He recognizes that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs" the Court's decision. (Id. at PageID 37 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). But he points to the Sixth Circuit's opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th

5

Cir. July 16, 2018), and certain decisions in the Northern District of Ohio, e.g. Villalta, 2025 U.S. Dist. LEXIS 169688, which required petitioners to appeal to the BIA before seeking habeas relief under "prudential principles of exhaustion." (ECF No. 12 at PageID 38.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody. Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement. And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025). Therefore, exhaustion may only be required here based on "sound judicial discretion." McCarthy, 503 U.S. at 144. But, exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529 U.S. at 13.

Montes Ramales's failure to exhaust is excused. First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him. The Parties do not dispute any material facts. (See ECF Nos. 1 at PageID 3; 12 at PageID 36–37.) Thus, deciding which statute applies to Montes Ramales's detention is a purely legal question, "which is right in a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Montes Ramales is required to pursue an appeal with the BIA, his appeal process would likely take six months or more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted). Therefore, denying Montes Ramales the chance to have a bond hearing merely because he did not appeal to the BIA may

6

force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years." 29 I. & N. Dec. at 220–21. Thus, any appeal would be futile, and exhaustion is excused.

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>                  . . .
>      (2)    Inspection of other aliens
>          (A)    In general
>                  Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

7

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen

"present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this

section, all applicants for admission "shall be detained." Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in

relevant part:

> (a)    Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)    may continue to detain the arrested alien; and
> (2)    may release the alien on—
> > (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
> > . . .

8 U.S.C. § 1226(a) (emphasis added). The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who also,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

Id. § 1226(c)(1)(E)(ii). "Noncitizens arrested and detained under § 1226 have a right to request a

custody redetermination (i.e., a bond hearing) before an IJ." Lopez-Campos, 2025 WL 2496379,

at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified). "The IJ evaluates whether there

is a risk of nonappearance or danger to the community." Id. (citing Guerra, 24 I. & N. Dec. 37,

40 (B.I.A. 2006)). Thus, except for those noncitizens with a record of certain criminal offenses,

8

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[2]

Montes Ramales argues that ICE's new interpretation of § 1225(b)(2)(A) violates 8 U.S.C. § 1226(a) and his rights under the Fifth Amendment.  (ECF No. 1 at PageID 8–11.)  He argues that § 1226(a) applies to him because he "is a long-time (25-year) interior resident of the United States."  (Id. at PageID 1.)  Although he concedes that he is an "applicant for admission," he asserts that, as a longtime resident, he is not "seeking admission."  (Id. at PageID 5, 8.)

Respondent argues that § 1225(b)(2)(A), not § 1226(a), applies to Montes Ramales because he is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border."  (ECF No. 12 at PageID 39.)  As a result, they assert that "he is subject to mandatory detention and not entitled to a bond hearing."  (Id.)  But Respondent appears to miss the Petition's argument: Montes Ramales concedes that he is an "applicant for admission," but contends that the plain language of § 1225 requires that he also be presently "seeking admission," which he denies, for the statute to apply to him.  (ECF No. 1 at PageID 5.)  Respondent does not address this point in his response.

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondent's contention that Montes Ramales is an "applicant for admission."  Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although

---

[2] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute."  Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).  Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings.  But Montes Ramales was not "arriving" when he was detained far away from the United States border, after having been in this country for approximately twenty-four years.  (ECF No. 1 at PageID 11.)  Also, the record does not show that he was eligible for expedited removal proceedings.  Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondent's reading of the statute.  Section 1225 describes the process of inspecting and removing immigrants actively crossing the border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.").  And Respondent's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself.  "If possible, every word and every provision is to be given effect."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply § 1225(b)(2)(A) to Montes Ramales would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Montes Ramales was seeking admission at the time of his detention, nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted."  The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for

10

approximately twenty-four years.  To interpret "applicant for admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondent's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Respondent's reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Montes Ramales's reading of the statute is the only one compatible with the presence of § 1226(c).  What is more, Montes Ramales has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Montes Ramales's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Montes Ramales was charged with being removable and detained in West Tennessee.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [him]" or she "may release [him] on

11

bond." (Id.)  But the Attorney General may <u>not</u> deny him the bond hearing to which he is entitled.  <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Montes Ramales's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondent asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  <u>See</u> <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  <u>Lopez-Campos</u>, 2025 WL 2496379, at *8 (quoting <u>Maldonado v. Olsen</u>, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for approximately twenty-four years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

## III.   Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully,

temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Montes Ramales argues that Respondent violated the Due Process Clause of the Fifth Amendment by detaining him without a bond hearing. (ECF No. 1 at PageID 8–11.) Respondent, however, asserts that Montes Ramales's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'" (ECF No. 12 at PageID 42 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Montes Ramales, he is owed the process given to him under that statute. As for the Mathews factors, (1) Montes Ramales has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Montes Ramales's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention. Indeed, before he was apprehended, Montes Ramales was present in the United States for many years, living with his U.S. citizen wife and three U.S. citizen children. (ECF No. 1 at PageID 3.) These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside.  Thus, Montes Ramales is entitled to immediate release.  See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).").  Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights.  Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Montes Ramales's petition is **GRANTED**.

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**.  Respondent is ordered to release Montes Ramales immediately.  Respondent is **ENJOINED** from pursuing Montes Ramales's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondent is further **ORDERED** to file a Status Report with this Court on or before April 6, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 2nd day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

14